666 So.2d 754 (1995)
Aristobolo PETTI
v.
STATE of Mississippi.
No. 91-KA-00442-SCT.
Supreme Court of Mississippi, En Banc.
November 30, 1995.
*755 Leon Mangum, Decatur, for appellant.
Michael C. Moore, Attorney General, Jackson, MS; Mary Margaret Bowers, Sp. Ass't Attorney General, Jackson, for appellee.
PRATHER, Presiding Justice, for the Court:
Aristobolo Petti prosecutes an appeal from his conviction of a cocaine possession and the three (3) year sentence imposed by the trial court. Three (3) issues are raised by Petti on appeal.
First, he contends the trial court erred in denying his request for a two-theory instruction claiming the State's case was based entirely upon circumstantial evidence. The Court finds no merit in this claim.
Second, Petti contends the verdict of the jury was against the overwhelming weight of the evidence. Given the nature and disposition of Petti's final claim, the Court finds it unnecessary to assess the weight of the evidence.
The disposition of this appeal is controlled by Petti's third claim. Petti argues that a search warrant affidavit contained false information and lacked sufficient truthful underlying facts and circumstances to justify a neutral and detached magistrate in finding probable cause for issuance of a search warrant. Finding that the record fails to reflect the existence of a substantial basis for the issuing magistrate's determination of probable cause, this Court reverses and remands Petti's conviction.

*756 I. FACTS
On November 2, 1990, around 5:00 p.m., Larry Parks, a police captain with the Newton Police Department, obtained a search warrant from Municipal Judge Edmund Phillips authorizing the search of a mobile home in Newton occupied and controlled by Lynn Lindsey. The basis for obtaining the first search warrant  hereinafter referred to as the "mobile home" warrant  was information received by Parks from a confidential source. Aristobolo Petti and several other persons were present at the mobile home during a search of the trailer which yielded some illegal drugs. A search of the Petti's person at this location produced a motel room key and a large sum of currency. This warrant is not an issue in this case.
Later that evening, at 8:45 p.m., Captain Parks, utilizing information obtained during the afternoon search of Lindsey's trailer, secured a second warrant from Judge Phillips  hereinafter referred to as the "motel room" warrant which is the issue in this case  authorizing the search of room 108 of the Days Inn Motel in Newton. This was the room occupied by the defendant, Aristobolo Petti, during his stay in Mississippi.
During the subsequent search of room 108 conducted by Captain Parks and Agent Gardner, Parks found in the bathroom area inside a trick-or-treat candy bag, a small plastic film canister containing a white powdery residue. A blue Kleenex tissue stained with residue was found inside a waste basket. Ted Chapman, a forensic scientist with the Mississippi Crime Laboratory, testified the residue inside the canister and the small crystals clinging to the tissue was cocaine.
Petti, a Panamanian residing in Houston, Texas, testified in his own behalf during a suppression hearing. Petti denied he possessed the cocaine found in the motel room registered in his name alone and occupied, according to information contained on the motel registration card, by at least one other person.
Petti, who did not deny the cocaine was found in his motel room, testified he had come to Newton to visit a woman he met at a wedding in Houston, Texas, and that he had traveled to Mississippi with two companions who shared his room at the Days Inn the night of November 1st. He further testified that two women had been inside the room with his two companions, and he had seen them smoking some marijuana and cocaine prior to his departure from the room the morning of November 2nd.
According to Petti, the cash found on his person was his earnings from painting houses and included proceeds from the sale of a gold chain, rings, and a camera. Although Petti testified he had never been to Newton, Mississippi prior to November 1, 1990, Officer Parks testified during rebuttal he had seen Petti in the area approximately two weeks prior to this incident.
The suppression hearing was conducted outside the presence of the jury after Petti, via a motion to suppress, assailed the legality of the warrant authorizing a search of room 108. Petti claimed then, as he does now, the warrant-issuing magistrate did not have probable cause for issuance of the "motel room" warrant.
Both Captain Parks and Judge Phillips testified with respect to the underlying facts and circumstances leading to Judge Phillips' finding of probable cause. The underlying "facts and circumstances sheet" attached to the affidavit was supplemented with oral testimony given under the trustworthiness of the official oath. There was a major discrepancy between the information contained in the affidavit and the testimony elicited during the suppression hearing. Nevertheless, at the close of the suppression hearing, the circuit judge ruled that under the totality of the circumstances test, there was probable cause for issuance of the "motel room" warrant.

II. LEGAL ANALYSIS

A. The Two-theory Instruction
Petti argues the trial judge committed reversible error when he refused to grant jury instruction D-7, a so-called "two-theory" charge, which reads as follows:
The Court instructs the jury that if there be facts or circumstances in this case susceptible of two interpretations, one favorable *757 and the other unfavorable to the accused, and when the jury has considered such facts and circumstances with all the other evidence, there is a reasonable doubt as to the correct interpretation, then you must resolve such doubt in favor of the accused and place upon such facts and/or circumstances the interpretation favorable to the defendant.
This Court has held on numerous occasions that it is only in cases consisting entirely of circumstantial evidence that an instruction must be given which requires the jury to resolve, in favor of the accused, doubt over circumstances susceptible of two interpretations. Medley v. State, 600 So.2d 957 (Miss. 1992); Barnes v. State, 532 So.2d 1231 (Miss. 1988). Where the evidence is purely circumstantial, the trial court must grant a "two-theory" instruction. Parker v. State, 606 So.2d 1132, 1140-41 (Miss. 1992); Henderson v. State, 453 So.2d 708, 710 (Miss. 1984).
Petti's complaint might well have merit were it not for two important pieces of direct evidence that were vital to conviction. First, the evidence developed at trial established directly that the motel room in which the cocaine was found was registered in the name of Petti alone and only one key had been issued to its occupant. The room key, as well as over $2000 in United States currency, was found on the defendant's person prior to the search of his room.
Second, Petti testified in his own behalf that his two companions, with whom he allegedly shared room 108, smoked cocaine inside the room before he left on the morning of November 2, 1990. Thus, Petti's own testimony places cocaine inside room 108. This Court finds no error in the trial court's refusal to grant the two-theory instruction.

B. Weight of Evidence
Given the unlawfulness of the search and suppression of the evidence, it is unnecessary to address Petti's weight of the evidence claim. We simply note that evidence of constructive possession was slight.

C. Invalid and Unlawful Search Warrant
Petti contends the cocaine residue found inside the motel room registered in his name was inadmissible because it was seized pursuant to a search warrant issued without probable cause. In resolving this issue, our task, as a reviewing Court, is to insure that the issuing magistrate had a "substantial basis for ... conclud[ing] that probable cause existed" for issuance of the search warrant. Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983).
The federal case law which guides our analysis of this question is as follows. Gates dismantled the analytical superstructure of Aguilar v. State of Tex., 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. U.S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). It substituted a "totality of the circumstances" test for the arguably more restrictive two-pronged test of Aguilar-Spinelli. The two prongs of "veracity" and "basis of knowledge" were not, however, abandoned totally; rather, they are still "highly relevant" in the totality analysis.
First, the information necessary to establish probable cause "must be information reasonably leading an officer to believe that, then and there, contraband or evidence material to a criminal investigation would be found." Rooks v. State, 529 So.2d 546, 554-55 (Miss. 1988).
In Barrett v. Miller, 599 So.2d 559, 566 (Miss. 1992), we said:
A search warrant may only be issued when the police have demonstrated probable cause by introducing evidence of underlying facts and circumstances before the magistrate granting the warrant. Branch v. State, 347 So.2d 957, 958 (Miss. 1977). Probable cause exists when facts and circumstances within an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient within themselves to justify a man of average caution in the belief that a crime has been committed and that a particular person committed it. Bevill v. State, 556 So.2d 699, 712 (Miss. 1990). The affidavit is the means of presenting to the issuing magistrate a basis upon which he may determine whether in fact probable cause exists. Bevill, 556 So.2d at 712. In reviewing a magistrate's finding of probable *758 cause, this Court does not make a de novo determination of probable cause, but only determines if there was a substantial basis for the magistrate's determination of probable cause. Smith v. State, 504 So.2d 1194, 1196 (Miss. 1987).
See also Williams v. State, 583 So.2d 620, 622 (Miss. 1991) ("[I]n reviewing a magistrate's finding of probable cause, we look for a substantial objective basis for that finding.").
Second, in determining the question of probable cause for issuance of a warrant, "[o]ral testimony is admissible before the officer who is required to issue a search warrant." Prueitt v. State, 261 So.2d 119, 123 (Miss. 1972). Under the "totality of the circumstances" test, a written affidavit supplemented by oral testimony of police officers can, as combined, establish a "substantial basis" for a magistrate's determination that probable cause existed for issuance of a search warrant. Lockett v. State, 517 So.2d 1317, 1324 (Miss. 1987). "In making our review, this Court looks both to the facts and circumstances set forth in the affidavit for search warrant and as well, the sworn oral testimony presented to the issuing magistrate." Williams, 583 So.2d at 622.
Third, when the defendant asserts, as Petti does in his motion to suppress evidence, that the "information contained in the affidavit constitutes false swearing, then this Court must determine with the false material set aside," whether the affidavit's remaining content, together with the sworn oral testimony presented to the issuing magistrate, is sufficient to establish probable cause. The disposition of this latter issue is controlled by the case of Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), as stated in McNeal v. State, 617 So.2d 999 (Miss. 1993):
In Franks, the United States Supreme Court explained that:
Where the Defendant makes a substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth was included by the Affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the fourth amendment requires that a hearing be held at the Defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the Defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.
Id. at 1004. [citations omitted].
Even though the underlying facts stated in an affidavit for search warrant, considered alone, may not be sufficient to confer probable cause, oral testimony adduced before the issuing magistrate, when taken together with the affidavit, may sufficiently establish probable cause for issuance of a search warrant under the "totality of the circumstances" test. Hickson v. State, 512 So.2d 1, 3 (Miss. 1987). With these rules in mind, this Court turns to an analysis of the facts conveyed to the issuing magistrate, a municipal court judge.

1. Affidavit Standing Alone
With regard to the second search warrant which is in issue here authorizing the nighttime search of room 108, the underlying facts and circumstances sheet reflects the following:
FACTS AND CIRCUMSTANCES SHEET
I, Captain Larry Parks, executed a search warrant obtained from Judge Edmund J. Phillips, Jr. at 507 Oak St. Newton, MS. This address being the residence of Lynn Lindsey. While conducting the search of the premises and occupants found therein Petti, Aristobolo was found to be in possession of approximately four (4) grams of a white powder substance alleged to be cocaine, a large quantity of U.S. currency and a motel room key for room # 108 Days Inn Motel Highway 15 South Newton, MS. The manager at Days Inn verified that the motel room was registered to Petti, Aristobolo *759 and a card with Petti, Aristobolo name on it was given to above officer. Based on the above information I, Captain Larry Parks, request that a search warrant be issued for Room # 108 Days Inn Motel Newton, MS.
 2035 Hrs. P.M.
 Larry Parks 11-02-90
 F Gardner Agent MBN 2/Nov 90
At first glance, the information conveyed to the magistrate favoring the legality of the "motel room" warrant seems compelling enough. Testimony elicited during the suppression hearing, however, reflects the affidavit is seriously flawed in one material respect. Assertions from both Parks and Judge Phillips indicate the sworn allegation informing the issuing magistrate that four (4) grams of cocaine were found on Petti's person was not true. Captain Parks succinctly testified at the suppression hearing that the cocaine was not found on Petti and that this portion of his affidavit was false.
Judge Phillips concurred. He did not remember the affiants telling him orally they found drugs in Petti's possession. Rather, Parks told him they found it on the premises. Judge Phillips testified he was aware of the contents of the affidavit and that Parks swore to the information contained therein. This affidavit was absent any information from the affiant himself, nor any personal information from a confidential source. The officer admits to the false information without which no facts are asserted except Petti had a motel room key, and the room was registered to him.
After careful scrutiny of the facts, information contained in the affidavit alone did not provide a substantial basis for the magistrate's finding of probable cause. This Court turns now to an analysis of the oral testimony of the officers which supplemented the written affidavit to determine if that forms a substantive basis for probable cause.

2. Oral Testimony Presented To Warrant-Issuing Magistrate
Captain Parks testified during the suppression hearing that upon making application for the warrant authorizing a search of Lynn Lindsey's mobile home, he told Judge Phillips that his confidential informant had gone to Lindsey's trailer and had purchased drugs from a person the informant thought was from Mexico and that this person "was still selling." This important information was not contained in the affidavits for the "mobile home" or "motel room" warrants.
Parks also testified that, upon making application for a warrant authorizing a search of the motel room 108, he informed Judge Phillips that his confidential source had told him that "they" were going to get some more "crack" and would return later. This piece of information, likewise, was omitted from the "motel room" affidavit.
Captain Parks further testified he informed Judge Phillips that Petti was present at Lindsey's mobile home the afternoon it was searched and that a search of Petti's person at that time produced a motel room key for room 108 and a large amount of money.
The testimony of Judge Phillips, on the other hand, was not as specific. He freely acknowledged during the suppression hearing there was no allegation in either of the two affidavits or any sworn oral testimony that the confidential source had purchased drugs from Petti on November 2nd, only that the source had purchased drugs at Lindsey's mobile home. Judge Phillips testified he did not remember any underlying facts and circumstances conveyed to him beyond those contained in the affidavits.
Judge Phillips testified he was told by Captain Parks, who was placed under oath, that a confidential source had purchased drugs at Lynn Lindsey's mobile home. When Parks, several hours later, applied for another warrant authorizing a search of room 108, Judge Phillips was informed by Parks, again under the trustworthiness of the official oath, that authorities had found drugs in the mobile home and that a large amount of money and a motel room key were found on the person of Petti.
In the final analysis of both the written affidavit and oral testimony, the basis for issuance of a search warrant for room 108 was, at best, (1) Petti's presence, together with several others, at Lynn Lindsey's trailer *760 when drugs were purchased at that location by a confidential source; (2) Petti's presence at Lindsey's mobile home when a search of the premises yielded four (4) grams of cocaine; and (3) the presence on Petti's person of a large amount of money and a motel room key. Although Parks testified he told Judge Phillips the confidential source had purchased drugs from a person "from somewhere in Mexico" and that this person, presumably Petti, was still selling dope, this important piece of information was not contained in the underlying facts and circumstances sheet nor did Judge Phillips remember any such testimony.
A critical portion of the "motel room" affidavit consisted of false information that drugs were found on Petti's person during the search of Lindsey's mobile home when, in truth, they were not. No explanation was offered for this discrepancy by Captain Parks or by Agent Gardner, the other affiant, who did not testify during the suppression hearing.
The only information that everyone agrees was conveyed to the warrant-issuing magistrate was that Petti was present at Lindsey's trailer when drugs were purchased and later found, and a search of his person revealed a large amount of money and a motel room key. There was a major discrepancy between the information in the affidavit and the testimony elicited during the suppression hearing. The affidavit stated that drugs were found on Petti's person at Lindsey's mobile home when they were not. The affidavit was demonstratively false and the officers admitted its falsity.
This does not provide a substantial basis for the issuing magistrate's determination of probable cause. The first prong of the Franks test has been met. The next question of Franks is whether the remaining content is sufficient to establish probable cause.
Some of the information supplied to Parks by his confidential source, and other information gleaned personally by Parks, was never conveyed to the issuing magistrate either by affidavit or oral testimony. For example, Captain Parks testified during the suppression hearing that the confidential source had purchased drugs from the defendant that afternoon while at Lindsey's mobile home and that the exact amount of money found on Petti's person was $2,647. Moreover, there were five (5) people present at Lindsey's mobile home, and the confidential source had never made a buy from the other four. Had the official record of trial reflected that all this information was supplied to Judge Phillips, the finding of probable cause may have been justified. However, the facts presented to the trial judge do not support the trial judge's finding of a substantial basis for the issuing magistrate's determination of probable cause. Therefore, the warrant must be voided, together with introduction of the fruits of the search authorized by the warrant. The cocaine should have been suppressed. Since it was not, the conviction and judgment of the circuit court is reversed and remanded.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE, P.J., BANKS and McRAE, JJ., concur.
PITTMAN, J., dissents with separate written opinion joined by SULLIVAN, JAMES L. ROBERTS, Jr. and SMITH, JJ.
PITTMAN, Justice, dissenting:
This Court should find that there was substantial, credible evidence presented at the trial, sufficiently undergirding the trial judge's finding that the magistrate had a substantial basis for concluding that probable cause for issuance of the search warrant existed in this case.
The job of this Court on review is strictly to determine if the issuing magistrate had a "substantial basis for ... conclud[ing] that probable cause existed for issuance of the search warrant." Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
This Court in Rooks v. State, 529 So.2d 546, 554-55 (Miss. 1988), quoting Gates, reminded our trial judges to apply a practical, common sense approach in dealing with this problem. In summary, the Court said, the Court should adopt the "totality of the circumstances" approach when dealing with "probabilities," utilizing the practicalities of *761 everyday life on which reasonable, prudent men act, rather than legal technicians. Rooks, 529 So.2d at 554. "There only need be a fair probability that contraband or evidence of a crime will be found in a particular place." Id. Trial judges are required to examine the facts in each case, make a careful evaluation, and "in their own best judgment gleaned from life's experiences, determine whether probable cause existed for a particular search or issuance of a magistrate's search warrant." Id.
More importantly, "[t]his Court does not make a de novo determination of probable cause, but only determines if there was a substantial basis for the magistrate's determination of probable cause." Barrett v. Miller, 599 So.2d 559, 566 (Miss. 1992), quoting Smith v. State, 504 So.2d 1194, 1196 (Miss. 1987).
This Court has also authorized giving supplemental oral testimony to the magistrate. "In making our review, we look both to the facts and circumstances set forth in the affidavit for search warrant and as well, the sworn oral testimony presented to the issuing magistrate." Williams v. State, 583 So.2d 620, 622 (Miss. 1991). See also, Lockett v. State, 517 So.2d 1317, 1324 (Miss. 1987); Hester v. State, 463 So.2d 1087, 1089 (Miss. 1985); Lee v. State, 435 So.2d 674, 677 (Miss. 1983); Read v. State, 430 So.2d 832, 834-35 (Miss. 1983); Wilborn v. State, 394 So.2d 1355, 1357 (Miss. 1981); Prueitt v. State, 261 So.2d 119, 123 (Miss. 1972).
It is true that the affidavit did contain an incorrect statement. The affidavit states that Petti "was found to be in possession of ... cocaine" at the Lindsey trailer. This statement was a mistake which Captain Parks corrected when he testified under oath to Judge Phillips prior to the issuance of the "motel room" search warrant. Judge Phillips testified at the suppression hearing that "I think they simply said they found drugs on the premises. I don't remember them saying that they found drugs in his possession." Later on cross-examination, Judge Phillips also testified that "[Parks] said that  he said that they found [cocaine]. I don't think they said they found it on his person. Whether that means the same thing as being in possession of it I don't know, but he said they found it on the premises."
Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), stands for the proposition that a defendant in a criminal proceeding has the right under the Fourth and Fourteenth Amendments to challenge the truthfulness of factual statements made in an affidavit supporting the warrant. "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Id. 438 U.S. at 155-156, 98 S.Ct. at 2676. "There must be allegations of deliberate falsehood or of reckless disregard for the truth and those allegations must be accompanied by an offer of proof ... Allegations of negligence or innocent mistake are insufficient." Id. 438 U.S. at 171, 98 S.Ct. at 2684.
In looking at the present case, the considerations announced in Franks need not be reached, nor have they been met. Petti was given a hearing, which is what Franks requires once a sufficient showing is made. This is despite the fact that Petti did not make a "substantial preliminary showing." Unlike the situation contemplated in Franks, there was never any need to challenge the factual statement made in the affidavit. It has been conceded ab initio that the written information was false and that this was conveyed to the magistrate prior to any determination and played no part in the finding of probable cause. Although actually false, at most the statement was made negligently or as a mistake, but certainly not intentionally or with reckless disregard for the truth as Franks contemplates. Further, according to the testimony by the magistrate, this statement was verbally corrected prior to the warrant being issued.
As the Franks opinion clearly indicates, its factors have a "limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegation of misstatements must be accorded." 438 *762 U.S. at 167, 98 S.Ct. at 2682. The Franks Court expressed its reluctance to "extend the rule of exclusion beyond instances of deliberate misstatements, and those of reckless disregard, [which] leaves a broad field where the magistrate is the sole protection of a citizen's Fourth Amendment right, namely, in instances where police have been merely negligent in checking or recording the facts relevant to a probable-cause determination." 438 U.S. at 170, 98 S.Ct. at 2683.
I would decline to extend the holding of Franks to the present circumstances. Too much consideration and emphasis is given to a misstatement made in the affidavit where that false information played no part in the magistrate's issuance of the search warrant. It was made neither intentionally nor with reckless disregard for the truth. As discussed extensively in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the exclusionary rule historically was designed "to deter police misconduct rather than to punish the errors of judges and magistrates." 468 U.S. at 916, 104 S.Ct. at 3417. "Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false except for his reckless disregard of the truth." 468 U.S. at 923, 104 S.Ct. at 3421, citing Franks v. Delaware. In the absence of reckless disregard for the truth by the requesting officer, there are no valid objectives served by the judicially created exclusionary rule.
It is questionable whether the affidavit standing alone, without the oral testimony, would have provided probable cause for issuance of the search warrant. It is not necessary for the majority to decide whether this affidavit is sufficient since this was not the totality of the evidence or circumstances which the magistrate considered. The majority fails to properly consider Captain Parks' correction of his own mistake in the affidavit prior to issuance of the search warrant and the additional information he provided in his testimony. More importantly, Judge Phillips did not rely upon the incorrect statement in the affidavit. Because of Captain Parks' oral statement, which served to correct the initial statement, the impartial magistrate knew prior to issuing the search warrant, that the four grams of cocaine in Lindsey's trailer was not found in Petti's possession.
We should consider on review the sum total of the information, both written and oral, based on the "totality of the circumstances" that was given to Judge Phillips by Captain Parks and the other officer testifying prior to issuance of the warrant.
The information provided Judge Phillips consisted of at least the following:
1. There was a proven, reliable confidential source that Parks had known for a year and a half or two and who was not a convicted felon.
2. The source had made a buy of drugs from someone present at the trailer before.
3. The source stated that the person that he had bought from before was there at the trailer, and that he was still selling.
4. The source described the person as someone "that wasn't from around here, because he couldn't hardly understand him, and he thought was from somewhere in Mexico or someplace like that, and that he was kind of a stocky built, short guy, had a beard, kind of  he wasn't real dark, ... but kind of light complected."
5. Parks, while executing the warrant at the Lindsey trailer, located this same person, searched him, and found a sizable sum of money and a key to room 108, Days Inn Motel, Highway 15, Newton, Mississippi.
6. The person, Petti, was confirmed by the motel manager as being registered in room 108.
7. Drugs were found on Lynn Lindsey's person and cocaine was found in the bathroom of the trailer while Petti was present.
8. The source stated he was told that "they were going to get some more crack and that they would be back a while later."
The reliability of the source was confirmed on both occasions involving the search warrants, because cocaine was found at both locations. Given the "totality of the circumstances," it is certainly practical from a common sense perspective that an impartial magistrate could, using his best judgment, *763 conclude that there existed a "fair" probability that drugs might be found in Room 108 at the Days Inn Motel in Newton. This logical inference is especially true in light of the comment at the trailer that "they" were going after more cocaine and would be back later. This is particularly relevant since Petti had been the source of a previous drug purchase, was from out of town and was registered in Room 108 at the Days Inn in Newton. "They" could only have meant Lindsey and Petti because the record only supports drug involvement of these two out of the five individuals present at the Lindsey trailer.
Although it would have been more desirable for the totality of the oral statements by Captain Parks to be reduced to writing on the affidavit, we do not question the right of the trial judge to find from Parks' testimony that he gave all information to Judge Phillips that was essential to establish probable cause in this case. There is no basis in the record for concluding that this information was not given to Judge Phillips. We should not disregard the significance of what Judge Phillips recalled simply because he did not remember much about the underlying facts and circumstances beyond what was contained in the affidavits. The limited memory of the magistrate should be no barrier to upholding the warrant unless his memory differs with the other evidence.
In the present case, the affidavit was supplemented by considerable additional sworn oral testimony. The record clearly reflects that Captain Parks testified during the suppression hearing that he told Judge Phillips the informant stated that "he had told me a guy he had bought from before was there at the trailer, and that he was still selling." The accurate description by the confidential source is compelling that this person was Petti.
The affidavit may be supplemented by oral testimony. All evidence supporting the warrant is important whether it be in the form of oral testimony or in writing. This is especially true in light of the fact that our review evaluates whether the warrant passes or fails the ultimate inspection, and the warrant stands or falls on both the affidavit and any supplemental oral testimony in support of the issuance of the warrant.
It is my view that the testimony of Captain Parks is sufficient for the circuit judge to conclude from "a totality of the circumstances," that the statements given the magistrate were sufficient to establish probable cause for the issuance of the search warrant. "`Courts should not invalidate warrant[s] by interpreting affidavit[s] in a hyper technical, rather than a common sense, manner.'" Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Accordingly, I would find this appeal to be without merit and would allow the finding of the circuit judge to stand and would affirm the conviction.
Therefore, I dissent.
SULLIVAN, JAMES L. ROBERTS, Jr. and SMITH, JJ., join this opinion.