# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01815-COA

GEORGE J. STRICKLAND A/K/A GEORGE          APPELLANT
JACKSON STRICKLAND A/K/A GEORGE
STRICKLAND

v.

STATE OF MISSISSIPPI                                  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/03/2014 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MANSLAUGHTER AND SENTENCED TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED AND FIFTEEN YEARS TO SERVE FOLLOWED BY FIVE YEARS OF POSTRELEASE SUPERVISION, AND TO PAY A $1,000 FINE |
| DISPOSITION: | AFFIRMED - 05/24/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., CARLTON AND FAIR, JJ.**

**LEE, C.J., FOR THE COURT:**

## PROCEDURAL HISTORY

¶1.    George Strickland (Strickland) was indicted for the aggravated assault of his estranged

wife, Patricia Strickland, and for the murder of her boyfriend, Christopher George (George).

A jury in the Lowndes County Circuit Court found Strickland guilty of manslaughter but not guilty of aggravated assault.[1] Subsequently, the trial court sentenced Strickland to twenty years in the custody of the Mississippi Department of Corrections, with five years suspended, fifteen years to serve, five years of postrelease supervision, and to pay a $1,000 fine. Strickland filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the trial court denied. Strickland now appeals, claiming he was entitled to (1) an acquittal under *Weathersby*,[2] and (2) a new trial because the verdict was against the overwhelming weight of the evidence.

**FACTS**

¶2. Strickland and his wife, Patricia, had been separated for a number of years.[3] Patricia and her boyfriend, George, lived in Birmingham, Alabama; however, according to the terms of George's parole, he was supposed to remain in Lowndes County. So Patricia and George would stay at Strickland's house for a few days every month to allow George to check in with his parole officer.

¶3. Strickland's account of the events leading up to the shooting was revealed during two interviews conducted by Detective Eli Perrigin with the Lowndes County Sheriff's Department. According to Strickland, there were several times when Patricia and George

---

[1] At trial, the jury was instructed on murder, heat-of-passion manslaughter, and "imperfect self-defense" manslaughter.

[2] *Weathersby v. State*, 165 Miss. 207, 147 So. 481 (1933).

[3] In his statement to the police, Strickland stated he and Patricia had been separated for eight years. Another witness, Tommy Brown, testified during trial that Strickland and Patricia had been separated for at least a year and that Patricia had filed for divorce.

2

would take or use his possessions without his permission. On January 31, 2011, Patricia and George had been staying at Strickland's house. According to Strickland, Patricia and George had taken his 1968 Firebird earlier that day, and they planned on taking his four other cars as well as his trailer park, land, shop, tools, equipment, Rolex, and house.

¶4.     As Strickland was leaving the house that day, he put his .38 revolver in his pocket. Initially, Strickland claimed that he simply intended to remove the gun from the house because George, a parolee, was not allowed to be around guns. However, when the police discovered that Strickland's house contained several other guns, Strickland said he had the gun in his pocket because he wanted to sell it at a pawn shop. Later, Strickland admitted he was carrying the gun in his pocket because he was afraid there might be a confrontation between him and George. That same day, Strickland said he had an argument with Patricia and George, and they told him to "get the f*** out the house." Later, Strickland found George with a box containing his 12-volt car lights. Strickland said he confronted George about the lights, and George attacked him. Strickland said that George choked, kneed, head-butted, and kicked him. He also said that during this altercation, Patricia told George to "kill the son of a b****." Strickland claimed he shot George in self-defense.

¶5.     Strickland told the detectives he emptied the gun by firing at George.[4] But the detectives found a bullet in the sofa—an entirely different direction from where Strickland shot George. Strickland claimed Patricia came at him with a baseball bat or a knife, and he fired a warning shot at her. Later, Strickland stated that he did not remember shooting at

---

[4] George was shot four times.

Patricia.

¶6.    After the shooting, Strickland went to the body shop next door and told the owner, Tommy Brown, to call 911.  Brown testified that Strickland said Patricia and George were trying to kill him.  However, Brown did not mention these claims in his statement to police on the day of the shooting.  Brown also testified that Strickland had a red mark on his throat and fingernail scratches on the back of his hand.  Booker Jordan, a customer in the body shop, testified that Strickland walked into the shop carrying a gun.  Jordan heard Strickland say to call 911 because he killed someone.  Jordan also heard Strickland tell Brown that he shot George because he caught George and Patricia having sexual intercourse.  Terry Mann, an employee of the body shop who was also present, denied hearing Strickland say that.  Mann did admit that Strickland went into Brown's office, and he did not hear everything the two men discussed.

¶7.    Corporal Lloyd Lash, with the Lowndes County Sheriff's Department, responded to the scene and arrested Strickland.  Corporal Lash testified that, during transportation to the sheriff's department, Strickland told him that he caught Patricia and George having sexual intercourse.  Corporal Lash immediately pulled the car over and read Strickland his *Miranda*[5] rights.  After doing so, Strickland claimed Patricia and George were plotting to kill him.

¶8.    Detective Perrigin testified that during Strickland's interview, he did not notice any evidence that Strickland had been in a physical altercation.

**DISCUSSION**

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

### I.    *Weathersby* **Rule**

¶9.    In his first issue on appeal, Strickland argues he was entitled to an acquittal under the *Weathersby* rule. Because Strickland failed to specifically argue the *Weathersby* rule before the trial court as a ground for a directed verdict,[6] this Court cannot review the issue. *Kuykendall v. State*, 50 So. 3d 376, 380 (¶13) (Miss. Ct. App. 2010). Procedural bar notwithstanding, the *Weathersby* rule is inapplicable in this case.

¶10.    Raising the *Weathersby* rule is a challenge to the sufficiency of the evidence. Our general standard of review for sufficiency issues is as follows:

> This Court must consider all the evidence in the light most favorable to the State with respect to each element of the offense. The credible evidence which is consistent with the verdict must be accepted as true, . . . and the State has to be given the benefit of all favorable inferences which may be reasonably drawn from the evidence presented. This Court may reverse the [trial] court's conviction only where the evidence is such that reasonable and fair-minded jurors could only find the defendant not guilty.

*Watts v. State*, 717 So. 2d 314, 320 (¶16) (Miss. 1998) (citations omitted).

¶11.    According to *Weathersby*, "where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness . . . , or by the physical facts or by the facts of common knowledge." *Weathersby v. State*, 165 Miss. 207, 147 So. 481, 482 (1933). Moreover, the defendant's version "must be reasonable and credible before he is entitled to an acquittal under the rule." *Blanks v. State*, 547 So. 2d 29, 33 (Miss. 1989).

---

[6] Strickland's attorney did mention the *Weathersby* rule, but only later during the discussion on jury instructions.

¶12.   Strickland's version of the shooting was not credible.  He repeatedly contradicted himself throughout his interview with Detective Perrigin, changing his story multiple times with regard to why he placed the gun in his pocket and whether he fired a bullet at Patricia. The jury had evidence before it that Strickland was anticipating an altercation with Patricia and George and that Strickland's motive was the couple's threat to take his belongings. There was sufficient evidence for the jury to find that Strickland was not acting in self-defense.  This issue is without merit.

## II.      Weight of the Evidence

¶13.   In his second issue, Strickland claims he was entitled to a new trial because the verdict was against the overwhelming weight of the evidence.  When reviewing a "denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005).  Additionally, we view the evidence in the light most favorable to the verdict. *Knight v. State*, 72 So. 3d 1056, 1065 (¶34) (Miss. 2011).

¶14.   The jury was instructed to find Strickland guilty of heat-of-passion manslaughter if it found Strickland killed George in a state of violent and uncontrollable rage suddenly aroused by immediate and reasonable provocation.  Strickland admittedly had been arguing with Patricia and George right before the altercation.  Earlier that day, Patricia and George had taken his car and told him they were planning on taking more of Strickland's belongings as well as his house.  The jury could have found that Strickland was provoked after finding

6

George with his box of 12-volt car lights, especially after the previous arguments. Furthermore, Strickland also told several people that he caught Patricia and George having sexual intercourse, which could also have led the jury to find him guilty of manslaughter. Taking the evidence in the light most favorable to the verdict, we cannot say that allowing the verdict to stand would sanction an unconscionable injustice.

¶15. **THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED AND FIFTEEN YEARS TO SERVE FOLLOWED BY FIVE YEARS OF POSTRELEASE SUPERVISION, AND TO PAY A $1,000 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**